JUDGE BUCHWALD

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

14 CV 6461

UNITED STATES OF AMERICA, ex rel. ANDREW
GELBMAN, individually and on behalf of individually and
on behalf of the person and the people
of STATE OF NEW YORK, THE CITY OF NEW YORK,
and the individual counties of the STATE OF NEW YORK,
including Albany County; Allegany County; Bronx County,
Broome County; Cattaraugus County; Cayuga County;
Chautauqua County; Chemung County; Chenango County;
Clinton County; Columbia County; Cortland County;
Delaware County; Dutchess County; Erie County; Essex
County; Franklin County; Fulton County; Genesee County;
Greene County; Hamilton County; Herkimer County;
Jefferson County; Kings County, Lewis County; Livingston
County; Madison County; Monroe County; Montgomery
County; Nassau County; New York County; Niagara County;
Oneida County; Onondaga County; Ontario County; Orange
County; Orleans County; Oswego County; Otsego County;
Queens County, Putnam County; Rensselaer County;
Richmond County, Rockland County; St. Lawrence County;
Saratoga County; Schenectady County; Schoharie County;
Schuyler County; Seneca County; Steuben County; Suffolk
County; Sullivan County; Tioga County; Tompkins County;
Ulster County; Warren County; Washington County; Wayne
County; Westchester County; Wyoming County, and, Yates
County,

Plaintiffs,

-against-

ALL METRO HOME CARE SERVICES, INC., YAI HOME
CARE SERVICES, INC., ALL METRO HOME CARE
SERVICES OF NEW YORK, INC., NYSARC, INC.,
UNITED CEREBRAL PALSY OF NEW YORK CITY,
INC., LIFESPIRE, INC., CRYSTAL RUN VILLAGE, INC.,
A & T HEALTHCARE, LLC, FORT HUDSON HOME
CARE, INC.,  VENTURE FOR THE, INC., F.E.G.S.
PROCARE HEALTH SERVICES, INC., YOUNG ADULT
INSTITUTE, INC., et al.

Defendants,

No.

COMPLAINT

Jury Trial Demanded





The individual plaintiff herein, ANDREW GELBMAN, as relator, by his attorneys, the Law Office of Richard B. Ancowitz, and the Law Office of Sanford Rosenblum, complaining of the Defendant, alleges the following:

1.      This Court has jurisdiction over the claims brought herein pursuant to 31 USC 3729 through 3733, and in particular 31 USC 3730 (a), and over all claims pursuant to this Honorable Court's jurisdiction.

2.      Venue lies pursuant to 31 USC 3732 (a), given that certain of the defendants, e.g., LIFESPIRE INC., F.E.G.S. PROCARE HEALTH SERVICES, INC and YOUNG ADULT INSTITUTE INC. each  have principal places of business, and/or reside, and/or transact business within this District.

## The Parties

3.      At all times hereinafter mentioned, plaintiff GELBMAN (hereinafter "plaintiff") has been employed by the STATE OF NEW YORK, and specifically, plaintiff has been employed by the STATE OF NEW YORK, Department of Health (hereinafter referred to as "DOH"), with the title of Information Specialist II since October 5, 2006.

4.      Since initial hiring, and continuing to date, plaintiff's employment duties have included operating as a Data Warehouse Interrogator, with responsibilities which have included:

- Perform Business & Systems Analysis for eMedNY
- Consult on evolution and system improvements for the eMedNY system.
- Consult on strategies for program implementation and verification.
- Perform detailed work with eMedNY data structures
- Perform a wide variety of Data Warehouse interrogations related to Medicaid management and fraud detection
- Consult on implementation of ICD-9/ICD-10 codesets

- Technical Writing especially letter and memoranda, interim reports and formal proposals.
- Consult on evolution of Medicaid Data Warehouse
- Evaluate project design proposals and project assessments
- Model Business Processes for the eMedNY system

5.     That each of the defendants named herein were providers of medical and/or health care related services to persons who they represented as being eligible to receive said services.

6.     That the Medicaid provider # and address, inter alia, of each of the defendants is set forth on the spreadsheet contained on the accompanying CD, annexed hereto as Exhibit A.[1]

## Summary of Plaintiffs' Contentions

7.     It is alleged that each of the defendants presented, or caused to be presented, Medicaid claims to THE UNITED STATES OF AMERICA, typically involving services rendered to persons with special needs, which it knew or reasonably should have known were legally and/or factually false.  The basis for defendant's knowledge of the falsity of these claims was information contained in defendant's own files and records which demonstrated that said recipients of benefits were not eligible or entitled, or were no longer eligible or entitled, to receive same.  It is further alleged that the Defendant created and/or utilized false records or statements material to the making of such false claims. It is submitted that the UNITED STATES OF AMERICA, the STATE OF NEW YORK, the CITY OF NEW YORK, and the various counties of NEW YORK outside the City of New York sustained damages as a result of false claims being made by the defendant providers.

## The Medicaid Program

---

[1] For the purpose of brevity as concerns the above caption, only the top twelve billing defendants are included in said caption. This action, however, is respectfully brought against each of the defendants listed in the CD attached as Exhibit A, and incorporated by reference as if fully set forth herein.

8.      That at all times hereinafter mentioned, Medicaid was and is a joint federal-state program designed to help provide assistance to eligible low-income individuals, as per 42 U.S.C. Sec. 1396, et seq. The Medicaid program is also designed to help provide assistance to eligible elderly and disabled persons.

9.      Pursuant to the above-referred to legislation, each State, including the STATE OF NEW YORK, establishes its own eligibility standards, payment rates, and program administration in accordance with federal law and regulation.

10.     THE STATE OF NEW YORK has promulgated an extensive regulatory scheme governing the administration of the Medicaid program within the STATE OF NEW YORK.

11.     As part of said regulatory scheme, and consistent with applicable law, certain Developmentally Disabled Persons are eligible for limited Medicaid benefits under 42 CFR parts 440 – 441.

12.     Those eligible for limited Medicaid eligibility are eligible for certain services not provided through "regular" Medicaid and are ineligible for certain services provided through "regular" Medicaid.

13.     That at all times hereinafter mentioned, the  "share" of Medicaid benefits attributable and payable by the Counties of the STATE OF NEW YORK outside the City of New York was typically twenty-five per cent (25%), though said "share" could vary between 0 and 100%.

14.     That at all times hereinafter mentioned , the State "share" of Medicaid benefits typically was  twenty-five per cent (25%), though said "share" could vary between 0 and 100%.

15.     That at all times hereinafter mentioned, the UNITED STATES OF AMERICA has typically paid fifty per cent (50%) of all Medicaid benefits received by health care provider-recipients though said "share" could vary between 0 and 100%.

16.     As used herein, the term "health care provider" typically, but not exclusively, refers to health care professionals who render medical or health services or supplies to residents of THE STATE OF NEW YORK.

17.     In addition, "health care provider", as used herein, also includes nursing homes, intermediate care facilities for the developmentally disabled and managed care providers, and other persons or entities who have presented billing seeking payment for their services through the Medicaid program.

18.     Said billings were typically generated through care provided through Intermediate Care Facility for the Developmentally Disabled, and Day Care and related Medicaid programs.

19.     That the STATE OF NEW YORK typically pays for 25% of all Medicaid benefits received by recipients.

20.     That the STATE OF NEW YORK, based upon information provided by the defendants, typically presents claims for reimbursement of Medicaid expenses to the UNITED STATES OF AMERICA via the EMedNY system, a system operated within the Department of Health of the State of New York.

21.     Upon information and belief, these claims, insofar as they related to services rendered outside the City of New York, were typically first submitted by the defendants to the New York State Department of Health in an X-12/HIPPA compliant format, which then relied on the information submitted therein, and forwarded said claims, in the same format, to the

UNITED STATES OF AMERICA, in order to obtain the Federal share of Medicaid expenditures, for the State's benefit.

22.     Upon information and belief, certain of these claims, typically claims for Intermediate Care Facilities, Residential Healthcare (Nursing Homes), and Home Health Service providers, insofar as they related to services rendered within the CITY OF NEW YORK, were typically first submitted by the defendants to the New York City Human Resource Administration (hereinafter "HRA") in an X-12/HIPPA compliant format, which then relied on the information submitted therein, and forwarded said claims, in the same format, to the STATE OF NEW YORK which then forwarded same to the UNITED STATES OF AMERICA, in order to obtain the Federal share of Medicaid expenditures, for both the City's benefit. Certain other of these claims were transmitted directly by the provider to the EMedNY system without passing through HRA.

23.     That these claims were initially presented to the UNITED STATES OF AMERICA on a weekly basis via a "Claims Adjudication Summary Report".

24.     That these claims were typically certified and presented to the UNITED STATES OF AMERICA by the New York State Department of Health via a quarterly report on a form denominated as a CMS-64 form, or report.

25.     That States and their subdivisions, including the various counties of New York State  outside the City of New York and the CITY OF NEW YORK, respectively, are permitted to seek reimbursement of expenses that are incurred in accordance with State statutes and regulations.

26.     That defendants have caused the STATE OF NEW YORK to submit false claims to the UNITED STATES OF AMERICA, which defendants knew or should have known were

not in accord with applicable State statutes and regulations, and which were false and not properly compensable.

27.     That the defendants have knowingly submitted, via the STATE OF NEW YORK, claims to the UNITED STATES OF AMERICA which were false, by virtue of their expressed and implied certification that these claims were in compliance with applicable federal and state Medicaid law and regulations.

28.     That the defendants have falsely certified to the UNITED STATES OF AMERICA and/or the STATE OF NEW YORK that said New York State and Federal laws and regulations had been complied with.

29.     That the representations made by the defendants to the UNITED STATES OF AMERICA and/or the STATE OF NEW YORK concerning the payment of Medicaid benefits were a material and substantial factor in causing the UNITED STATES OF AMERICA to pay said benefits to Defendants on behalf of ineligible recipients

30.     That the defendants expressly and falsely represented their compliance with fundamental procedural requirements governing the submission of claims to the UNITED STATES OF AMERICA via the STATE OF NEW YORK.

31.     That the defendants impliedly and falsely represented their compliance with fundamental procedural requirements governing the submission of claims to the UNITED STATES OF AMERICA via the STATE OF NEW YORK.

32.     That the defendants regularly and systematically authorized that Medicaid benefits be paid to said defendants in violation of STATE OF NEW YORK and UNITED STATES OF AMERICA Medicaid regulations, and thus allowed said defendants to improperly receive Medicaid benefits, despite the recipients' lack of eligibility to receive the services for which the defendants billed.

33.    That as described herein, the defendants knowingly and wrongfully submitted legally and/or factually false claims in a knowing, reckless disregard, and/or deliberate indifference to the rights of the UNITED STATES OF AMERICA and the STATE OF NEW YORK to be free from having false claims made against them, all in contravention of established laws and regulations.

34.    That the defendants, either directly or passed through the CITY OF NEW YORK, or the STATE OF NEW YORK, submitted numerous claims to the UNITED STATES OF AMERICA which were misleading and/or tended to mislead the UNITED STATES OF AMERICA and THE STATE OF NEW YORK, in order to induce them to pay monies to the providers that should not have been paid had defendants complied with applicable law and regulation.

35.    That the plaintiffs UNITED STATES OF AMERICA, the STATE OF NEW YORK, the CITY OF NEW YORK, and the various counties of the STATE OF NEW YORK outside the City of New York, as set forth in the above caption (hereinafter collectively described as "governmental plaintiffs"), each sustained damages relative to the aforementioned Medicaid claims submitted by the defendant providers, in an amount commensurate with their relative reimbursement of said claims to the providers, i.e. typically fifty per cent to the UNITED STATES OF AMERICA, twenty-five per cent to the STATE OF NEW YORK, and twenty-five per cent to the counties of the STATE OF NEW YORK outside the City of New York.

**The Process of Obtaining Medicaid Benefits By the Defendant Providers**

36.     Annexed as Exhibit A is a CD containing a spreadsheet which contains detailed information about billings of each of the defendant providers referable to ineligible patient-recipients from January 1, 2009 through June 29, 2014.[2]

37.     Said spreadsheet delineates with precision that each of the defendants billed the Medicaid program (and the various governmental entities who are plaintiff herein), for services and supplies allegedly rendered, including the date same were rendered, the Medicaid patient identifier number, the rate code billed, the amount paid by said plaintiffs relative to said claims, the procedures performed (where specified), and the recipient's diagnosis.

38.     In the case of each submission made by defendants for services rendered, hereinafter referred to as a "Medicaid claim", each defendant did, on each occasion, claim that the Medicaid program and the governmental plaintiffs described herein should pay for the services rendered to a recipient of services.

39.     In the case of each Medicaid claim made by a defendant provider of health care services, the provider had a non-delegable duty and responsibility to determine recipient eligibility for receiving the Medicaid benefits claimed by the provider.

40.     As per established law and regulation, within the past six years to date, a health care provider who sought Medicaid reimbursement for their services would typically enroll in the Medicaid program, and then upon rendering services to a Medicaid-eligible person, submit a "claim" for Medicaid benefits to defendant, i.e. financial remuneration services rendered, often via a practice management software,   New York State's ePaces system, or via hard-copy.

---

[2] As will be further set forth herein, claims made herein on behalf of the UNITED STATES OF AMERICA encompass a period of payments made commencing six years prior to the date of filing. Likewise, claims made on behalf of the STATE OF NEW YORK and the counties outside the State of New York encompass a period of payments made commencing ten years prior to the date of filing. The data contained as part of Exhibit A, representing a time period of approximately five years and seven months, are a substantial portion, albeit not a complete representation of said claims.

41.     As an alternative to sending hard-copy application packages, and representing the most commonly utilized method of making such claims, the authorized provider typically electronically submits  (in an approved format such as x-12/HIPAA compliant) data streams of application information and images of claim verification documents.

42.     Each provider must pass a certification process in order to participate in Medicaid billing. As per HRA as concerns claims resulting from supplies or services rendered within the City of New York, and the Department of Health of the State of New York for claims originating outside the City of New York, the process is designed to ensure that the format of the files received follows the required format, and that the pass/fail rate meets the 90% acceptance mark.

43.     Such health care provider claims, whether submitted electronically or via hard copy, would be received by HRA within the City of New York, or DOH outside the City of New York, each of which would then use a proprietary computer system known as eMedNY, to submit claims in the proper x-12/HIPAA compliant format to the New York State Department of Health. [latter part of the sentence needs to be changed]

44.     At all times mentioned herein, eMedNY was and is a computer system/program, set up by the STATE OF NEW YORK to adjudicate Medicaid health care provider claims.

45.     Typically, eMedNY would determine whether a claim should be paid, denied, pended, or otherwise disposed.

46.     In addition to the above possible determinations, eMedNY could also indicate that although there existed valid reasons for a claim not to be paid, the claim should nevertheless be paid. These types of claims were sometimes referred to as "pay and report" claims.

47.     If a claim was determined to be referred to as "pay and report", that was a determination by eMedNY that the claim should be paid.

48.     That eMedNY determined the status of how a claim should be disposed based upon a complex series of algorithms and factors, known as "edits".

49.     The various defendant providers relied upon the eMedNY system and the system's determinations that certain Medicaid health care provider claims be designated as "pay", "deny", or "pend".

50.     Claims as described above could be and were designated as pay, notwithstanding that there were failed edits which flagged and/or highlighted infirmities, and sometimes glaring infirmities, which warranted denial of the claim. Claims with failed edits which were designated as claims which should be paid were also known as "pay and report" claims.

51.     Once eMedNY determined that health care providers should be paid based upon defendant-provided information, it authorized monies to be paid and subsequently caused these monies to be paid to those providers, including the defendants herein.

52.     For claims made for services rendered after the CITY OF NEW YORK or STATE OF NEW YORK paid or caused to be paid said health care providers as per the parameters set by eMedNY, they then sought recompense of said payments from the UNITED STATES OF AMERICA, in order to obtain the latter's statutory share, as described above.

53.     Annexed as Exhibit B is a flow-chart which illustrates the aforementioned path which said Medicaid claims take, from New York City provider submission to the STATE OF NEW YORK until payment of the federal share by the UNITED STATES OF AMERICA to the defendants.

54.     Annexed as Exhibit C is a flow-chart which illustrates the path which said Medicaid claims take, from providers located outside the City of New York until payment of the federal share by the UNITED STATES OF AMERICA to the defendants.

55.     Plaintiff respectfully incorporates said flow-charts as if fully set-forth herein, as an amplification of the above-described the path of said Medicaid claims, from the making of the claim by the provider, through claim processing, and concluding with payment by the UNITED STATES OF AMERICA.

56.     By submitting billing for claims which should not have been paid, the defendants each breached their duty to the taxpayers of the UNITED STATES OF AMERICA under the waiver programs laid out in CFR 42 Part 440-441.

57.     Each defendant engaged in the systematic submission of false claims to the UNITED STATES OF AMERICA, in violation of law, as will be set forth further below.

58.     The defendants' conduct as specified above has resulted in their receipt of payments which were not warranted as per the regulations promulgated pertinent to the Medicaid program, resulting in additional and unwarranted cost to taxpayers.

59.     These services primarily include Intermediate Care for Developmentally Disabled persons, Day Care programs for Developmentally Disabled persons, and related services.

60.     Annexed hereto as Exhibit D is a spreadsheet delineating the "Edit Reason Codes" (described therein as "Edit Rsn Cd"), as well as an "Edit Reason Descriptions" (described therein as "Edit Rsn Descr"), the business logic of said edits  pertaining to the eMedNY "edits" described above, in the areas of billing described above. Also attached thereto is supporting documentation from the New York State Department of Health concerning said "edits".

61.     Said spreadsheet represents a list of the various "edits" which were used by eMedNY to describe billings which were falsely and improperly presented to and paid by the UNITED STATES OF AMERICA from January 1, 2009 through June 29, 2014.

**Examples of Types of False Claims**

62.     It is submitted that each of the "edits" contained on Exhibit D represent the payment of monies from the UNITED STATES OF AMERICA to the defendants, based upon false claims made by the defendants, as transmitted via either the City of New York or the State of New York.

63.     It is submitted that these claims, as made by health care providers via the eMedNY system, were each infirm and not properly compensable by the UNITED STATES OF AMERICA for one or more reasons, and that said infirmities were known to the defendants, yet the defendants nevertheless knowingly and/or recklessly continued to certify and/or submit that said claims should be paid, and that claims were false, and that said false claims should be submitted to the UNITED STATES OF AMERICA for reimbursement of said claims, either in whole or in part.

64.     It is submitted that the edits contained on Exhibit D are broken down by "Edit Reason Code", and that each edit also describes a particular sum paid by the UNITED STATES OF AMERICA to the defendants from January 1, 2009 through June 29, 2014.

### Claim Type I: Medicaid Coverage Code = 19 - Recipient Ineligible For This Service

65.     For example, it is submitted that as per Edit Reason Code #01350 [described therein as "Medicaid Coverage Code = 19 - Recipient Ineligible For This Service"], three hundred and thirty five million and nine hundred and eighty one and eight hundred and fifty nine dollars ($335,981,859.00) was paid by the UNITED STATES OF AMERICA January 1, 2009 through June 29, 2014, representing false claims presented by the defendants.

66.     Specifically, it is submitted that Medicaid regulations do not permit a claim to be filed by or paid to an Inpatient provider for clients with Category of Eligibility (COE) Medicaid Coverage Code = 19 (Community Coverage with Community Long Term Care) if

the Provider Category of Service = 0285 and Rate Code = 2950, 2951, 2954, 2955, or 2962 thru 2971.

67.     It is further submitted that  Medicaid regulations do not permit a claim to be filed by or paid to a Home Healthcare Provider for clients with Category of Eligibility (COE) Medicaid Coverage Code = 19 (Community Coverage with Community Long Term Care) if the Provider Category of Service = 0260, 0284, or 0388 and Rate Code = 2609, 2616, 2636 thru 2639, 2663 thru 2665, 2682, 2685, 2689 thru 2699, 2809, 2818, 2821 thru 2837, 2864, 3819, 3823 thru 3829, 3831, 3858 thru 3875, 9981, or 9990 thru 9998  or if the Provider Category of Service  is 0260 and Rate Code = 2301 thru 2309, 2311 thru 2336, 9912 thru 9923, 9930 thru 9935, 9960 thru 9967, 9970 thru 9973, or if the Provider Category of Service = 0263 or 0269.

68.     It is still further submitted that  Medicaid regulations do not permit a claim to be filed by or paid to an Intermediate Care Facility For the Developmentally Disabled for clients with Category of Eligibility (COE) Medicaid Coverage Code = 19 (Community Coverage with Community Long Term Care) if the Provider Category of Service = 0384.

69.     It is still further submitted that Medicaid regulations do not permit a claim to be filed by or paid to a Practitioner for clients with Category of Eligibility (COE) Medicaid Coverage Code = 19 (Community Coverage with Community Long Term Care) if the Provider Category of Service = 0521, 0522, 0523, or 0524, Procedure Code (2042) = S9123 or S9124 and Procedure Code Modifier = 'U1' (Care at Home Waiver Program, private duty nursing).

70.     That these claims were presented by the defendants notwithstanding the defendant's knowledge that the provider and/or recipients of services were *ineligible* to make such Medicaid claims, due to the fact that these claims were prohibited under 42 CFR Parts 430, 431, 435, 436, 440, 441 and 447 and 18 NYCRR 504.3 and in  particular subdivision (e)

of the latter,  and were therefore invalid, and should not have been paid in the first instance to the provider, and, correspondingly, should not have been presented for payment to the UNITED STATES OF AMERICA.

### Claim Type: Medicaid Coverage Code = 21 - Recipient Ineligible For This Service

71.     It is submitted that as per Edit Reason Code #01352 [described therein as "Medicaid Coverage Code = 21 - Recipient Ineligible For This Service"] that one hundred and three million and two hundred and seventy three hundred thousand and three hundred and thirty eight five dollars ($103,273,338.00) was paid by the UNITED STATES OF AMERICA January 1, 2009 through June 29, 2014, as per false claims presented by the defendants.

72.     Specifically, it is submitted that Medicaid regulations do not permit clinics, residential healthcare facilities, home health providers, childcare providers, intermediate care facilities for the developmentally disabled to filed claims or be paid for services to clients with Category of Eligibility (COE) Medicaid Coverage Code = 21 (Community Based Long Term Care) if the Type of Bill = 11, 12, 15 thru 18, 61, or 62.

73.     It is further submitted that  Medicaid regulations do not permit a claim to be filed by or paid to Residential Healthcare Facility for clients with Category of Eligibility (COE) Medicaid Coverage Code = 21 (Community Based Long Term Care) if the Provider Category of Service = 0165 and Rate Code = 3990.

74.     It is further submitted that  Medicaid regulations do not permit a claim to be filed by or paid to Home Healthcare Providers for clients with Category of Eligibility (COE) Medicaid Coverage Code = 21 (Community Based Long Term Care) if the Provider Category of Service = 0263 or 0269 or if the Provider Category of Service = 0260, 0284, 0388 and Rate Code (4218) = 2609, 2616, 2636 thru 2639, 2663 thru 2665, 2682, 2685, 2689 thru 2699, 2809, 2818, 2821 thru 2837, 2864, 3819, 3823 thru 3829, 3831, 3858 thru 3875, 9981, 9990

thru 9998 or if the Provider Category of Service = 0260 and Rate Code = 2301 thru 2309,

2311 thru 2336, 9912 thru 9923, 9930 thru 9935, 9960 thru 9967, 9970 thru 997.

75.     It is further submitted that Medicaid regulations do not permit a claim to be filed by

or paid to Practitioners for clients with Category of Eligibility (COE) Medicaid Coverage

Code = 21 (Community Based Long Term Care) if the Provider Category of Service = 0521,

0522, 0523, or 0524 and Procedure Code = S9123 or S9124 and Procedure Code Modifier =

U1 (Care at home waiver program, private duty nursing).

76.     It is further submitted that  Medicaid regulations do not permit a claim to be filed

by or paid to Intermediate Care Facilities for the Developmentally Disabled for clients with

Category of Eligibility (COE) Medicaid Coverage Code = 21 (Community Based Long Term

Care) if the Provider Category of Service = 0384.

77.     It is further submitted that  Medicaid regulations do not permit a claim to be filed

by or paid to Inpatient Care Providers for clients with Category of Eligibility (COE) Medicaid

Coverage Code = 21 (Community Based Long Term Care) if the Rate Code is NOT = 2946,

2950, 2951, 2953, 2956, 2958, 2960, or 2996 or if the Rate Code (4218) = 2946, 2950, 2951,

2953, 2956, 2958, 2960, or 2996, and Type of Bill (0394) = 11, 12, 15 thru 18, 61 or 62.

78.     It is further submitted that Medicaid regulations do not permit a claim to be filed by

or paid to Durable Medical Equipment (DME) Providers, Transportation providers, Referred

Ambulatory providers, Laboratories, Eye Care Providers or Dental Care providers for clients

with Category of Eligibility (COE) Medicaid Coverage Code = 21 (Community Based Long

Term Care) if the Provider Place Of Service Code = 21 (Inpatient).

79.     That these claims were presented by the defendants notwithstanding the

defendant's knowledge that the provider and/or recipients of services were *ineligible* to make

such Medicaid claims, due to the fact that these claims were prohibited under 42 CFR Parts

430, 431, 435, 436, 440, 441 and 447 and  18 NYCRR 504.3 and in  particular subdivision (e)

of same, and were therefore invalid, and should not have been paid in the first instance to the

provider, and, correspondingly, should not have been presented for payment to the UNITED

STATES OF AMERICA.

80.    At all times mentioned herein, each provider of services and supplies was under an

affirmative obligation in law, per 18 NYCRR 504.3 (e): "to submit claims for payment only

for services actually furnished and which were medically necessary or otherwise authorized

under the Social Services Law when furnished and **which were provided to eligible**

**persons."** [emphasis added]

### Damages

81.    Said spreadsheet at Exhibit A also depicts the aggregate monies paid by the

UNITED STATES OF AMERICA, to the providers (via the City of New York and the

STATE OF NEW YORK), commonly known as the "federal share" of Medicaid

reimbursement.

82.    Said spreadsheet thus represents damages sustained by the UNITED STATES OF

AMERICA, representing false claims presented by the defendants to the UNITED STATES

OF AMERICA from January 1, 2009 through June 29, 2014.

83.    Upon information and belief, it is believed that false claims were presented to the

UNITED STATES OF AMERICA for a period of at least six years prior to the filing of the

instant action, and that said spreadsheet represents a substantial, but not complete amount of

the amount of false claims submitted.

84.    Said spreadsheet indicates that a total of four hundred eighty-four million, five

hundred and one thousand, three hundred and sixty-one dollars ($484,501,361 .00) had been

paid by the UNITED STATES OF AMERICA from January 1, 2009 through June 29, 2014,

based upon claims falsely presented by the defendants, based upon the defendants false claims and representations, as described above.

85.     It is claimed that the defendants presented to the UNITED STATES OF AMERICA, and the UNITED STATES OF AMERICA paid to the defendants false claims in an amount up of four hundred eighty-four million, five hundred and one thousand, three hundred and sixty-one dollars ($484,501,361.00), during said period, and it is anticipated that an increased amount will be sought commensurate with presentation made within the six years prior to the commencement of the instant action.

86.     As a further result, it is claimed that the UNITED STATES OF AMERICA has sustained pecuniary loss as a result of false claims presented in said amounts exclusive of interest, penalties, or other damages recoverable under law.

87.     In addition, it is claimed that the STATE OF NEW YORK sustained pecuniary loss as a result of false claims in the amount of two hundred and thirty eight million, seven hundred and thirty-eight thousand, eight hundred and fifty-eight dollars ($238,738,858.00), for said time period from January 1, 2009 through June 29, 2014, exclusive of interest, penalties, or other damages recoverable under law, and it is anticipated that an increased amount will be sought commensurate with presentation made  within the ten years prior to the commencement of the instant action.

88.     In addition, it is claimed that the counties of the STATE OF NEW YORK outside the CITY OF NEW YORK sustained pecuniary loss as a result of false claims in the amount of One hundred and thirty-five million, one hundred and fifty-two thousand and twenty-four dollars ($135,152,024.00),  exclusive of interest, penalties, or other damages recoverable under law, and it is anticipated that an increased amount will be sought commensurate with presentation made  within the ten years prior to the commencement of the instant action.

89.     In addition, it is claimed that the CITY OF NEW YORK sustained pecuniary loss as a result of false claims in the amount of Sixty-one million, six hundred and ninety-five thousand, two hundred and thirty-five dollars ($61,695,235.00) exclusive of interest, penalties, or other damages recoverable under law, and it is anticipated that an increased amount will be sought commensurate with presentation made  within the ten years prior to the commencement of the instant action.

## As And For a First Cause of Action by Plaintiffs on behalf of GELBMAN and on behalf of the UNITED STATES OF AMERICA: Presenting False Claims For Payment per 31 USC 3729 (a) (1)

90.     That at all times herein mentioned, the defendants each did knowingly, or acting with deliberate ignorance or reckless disregard for the truth,  present or caused to be presented, false claims to the United States of America seeking payment and/or reimbursement of monies paid to Medicaid providers and/or benefit recipients, in violation of 31 USC 3729 (a)(1)(A).

91.     That at all times hereinafter mentioned, and for at least the past six years, the defendants each presented said false claims to the UNITED STATES OF AMERICA, representing Medicaid claims representing, upon information and belief, health care services ostensibly provided to twenty-eight thousand, found hundred and forty-five (28,445) recipients relating to approximately four million, nine hundred and seventy-eight thousand, two hundred and eleven (4,978,211) claims from January 1, 2009 through June 29, 2014. It is

submitted, upon information and belief, that the amount of said claims over the six year period to date was in excess of said amount, and that said six year total is claimed herein.

92.    It is claimed that a civil penalty be assessed against defendant for not less than $5,500 and not more than $11,000 for each one of the above-referred to claims, as per 31 USC 3729 (g).

93.    That said claims related to the types of Intermediate Care Facility for the Developmentally Disabled, Day Care Services, and Residential Health Care and related Medicaid claims presented to the UNITED STATES OF AMERICA, as described herein.

94.    That in requesting payment, the defendants each falsely certified and represented to the UNITED STATES OF AMERICA that the providers and/or recipients of said services were eligible to receive said services, in contravention of applicable law and regulation, including, but not limited to, 18 NYCRR 504.

95.    That the presentation of said false claims to the UNITED STATES OF AMERICA caused the UNITED STATES OF AMERICA to suffer significant pecuniary losses, by paying false claims which, contrary to eligibility law and regulation, should not have been presented to them.

**As And For a Second Cause of Action by Plaintiffs on behalf of themselves and on behalf of the UNITED STATES OF AMERICA: Use of False Statements per 31 USC 3729 (a)(1)(B)**

96.     That plaintiffs repeat, reiterate and re-allege each and every allegation as contained herein, including those set forth in the First Cause of Action of the within Complaint, with the same force and effect as though each were more fully set forth at length herein.

97.     As set forth above, the defendants each did knowingly, or acting with deliberate ignorance and/or reckless disregard for the truth, made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, in connection with the submission of the aforementioned claims for Medicaid services rendered, in violation of 31 USC 3729 (a)(1)(B).

98.     That the defendants each knowingly used false records in order to induce the UNITED STATES OF AMERICA to pay said false claims.

99.     That the use of false records, as presented to the UNITED STATES OF AMERICA, caused the UNITED STATES OF AMERICA to pay said claims to Defendant, and to suffer significant pecuniary losses as a result.

**As And For a Third Cause of Action by Plaintiffs on behalf of GELBMAN and on behalf of the STATE OF NEW YORK: Presenting False Claims For Payment per State Finance Law Section 187 through 194 on behalf of The State of New York**

100.    That plaintiffs repeat, reiterate and re-allege each and every allegation as contained herein, including those set forth in the First and Second Causes of Action of the within Complaint, with the same force and effect as though each were more fully set forth at length herein.

101.    That at all times herein mentioned, the defendants each did knowingly, or acting with deliberate ignorance or reckless disregard for the truth, present or caused to be presented,

false claims to the STATE OF NEW YORK seeking payment and/or reimbursement of monies paid to Medicaid providers and/or benefit recipients, in violation of State Finance Law Section 189, and in particular, subdivisions (a) (b) (c) and (g).

102.    That at all times hereinafter mentioned, and for at least the past ten years, the defendants each presented said false claims to the STATE OF NEW YORK, and/or other entity authorized to present on behalf of the STATE OF NEW YORK, representing Medicaid claims representing, upon information and belief, health care services ostensibly provided to the twenty-eight thousand, found hundred and forty-five (28,445) recipients relating to approximately four million, nine hundred and seventy-eight thousand, two hundred and eleven (4,978,211) claims from January 1, 2009 through June 29, 2014, and it is anticipated that an increased amount will be sought commensurate with presentation made within the ten years prior to the commencement of the instant action.

103.    It is claimed that a civil penalty be assessed against defendant for not less than $6,000 and not more than $12,000 for each one of said claims, as per State Finance Law Sec. 189 (g).

104.    That said claims related to the types of Intermediate Care Facility for the Developmentally Disabled, Day Care Services, and Residential Health Care and related Medicaid claims presented to the STATE OF NEW YORK, as described herein.

105.    That in requesting payment, the defendants each falsely certified and represented to the STATE OF NEW YORK that the providers and/or recipients of said services were eligible to receive said services, in contravention of applicable law and regulation, including but not limited to 18 NYCRR 504.

106.     That the presentation of said false claims to the STATE OF NEW YORK caused the STATE OF NEW YORK to suffer significant pecuniary losses, by paying false claims which, contrary to eligibility law and regulation, should not have been presented to them.

### As And For a Fourth Cause of Action by Plaintiffs on behalf of GELBMAN and on behalf of the Counties of the STATE OF NEW YORK outside the City of New York: Presenting False Claims For Payment per State Finance Law Section 187 through 194 on behalf of said Counties of the STATE OF NEW YORK

107.     That plaintiffs repeat, reiterate and re-allege each and every allegation as contained herein, including those set forth in the First, Second, and Third Causes of Action of the within Complaint, with the same force and effect as though each were more fully set forth at length herein.

108.     That at all times herein mentioned, the defendants each did knowingly, or acting with deliberate ignorance or reckless disregard for the truth, presented or caused to be presented, false claims to the counties of the STATE OF NEW YORK seeking payment and/or reimbursement of monies paid to Medicaid providers and/or benefit recipients, in violation of State Finance Law Section 189, and in particular, subdivisions (a) (b) (c) and (g).

109.     That at all times hereinafter mentioned, and for at least the past six years, the defendants each presented said false claims to the counties of the STATE OF NEW YORK, and/or other entity authorized to present on behalf of the counties of the STATE OF NEW YORK, representing Medicaid claims representing, upon information and belief, health care services ostensibly provided to three million, six hundred and ninety-nine thousand, nine hundred and forty-seven (3,699,947) recipients claims from January 1, 2009 through June 29, 2014.

110.    It is claimed that a civil penalty be assessed against defendant for not less than $6,000 and not more than $12,000 for each one of said claims, as per State Finance Law Sec. 189 (g).

111.    That said claims related to the types of Intermediate Care Facility for the Developmentally Disabled, Day Care Services, and Residential Health Care and related Medicaid claims presented to the counties of the STATE OF NEW YORK, as described herein.

112.    That in requesting payment, the defendants each falsely certified and presented to the counties of the STATE OF NEW YORK outside the City of New York that the providers and/or recipients of said services were eligible to receive said services, in contravention of applicable law and regulation, including but not limited to 18 NYCRR 504.

113.    That the presentation of said false claims to the counties of the STATE OF NEW YORK outside the City of New York caused said counties of the STATE OF NEW YORK to suffer significant pecuniary losses, by paying false claims which, contrary to eligibility law and regulation, should not have been presented to them.

### As And For a Fifth Cause of Action by Plaintiffs on behalf of GELBMAN and on behalf of the CITY OF NEW YORK: Presenting False Claims For Payment per State Finance Law Section 187 through 194 on behalf of the CITY OF NEW YORK

114.    That plaintiffs repeat, reiterate and re-allege each and every allegation as contained herein, including those set forth in the First, Second, Third,  and Fourth Causes of Action of the within Complaint, with the same force and effect as though each were more fully set forth at length herein.

115.    That at all times herein mentioned, the defendants each did knowingly, or acting with deliberate ignorance or reckless disregard for the truth, presented or caused to be presented, false claims to THE CITY OF NEW YORK seeking payment and/or reimbursement of monies paid to Medicaid providers and/or benefit recipients, in violation of State Finance Law Section 189, and in particular, subdivisions (a) (b) (c) and (g).

116.    That at all times hereinafter mentioned, and for at least the past ten years, the defendants each presented said false claims to CITY OF NEW YORK, and/or other entity authorized to present on behalf of THE CITY OF NEW YORK, representing Medicaid claims representing, upon information and belief, health care services ostensibly relating to approximately one million, two hundred seventy-eight thousand, two hundred and sixty four claims from January 1, 2009 through June 29, 2014.

117.    It is claimed that a civil penalty be assessed against defendant for not less than $6,000 and not more than $12,000 for each one of said claims, as per State Finance Law Sec. 189 (g).

118.    That said claims related to the types of Intermediate Care Facility for the Developmentally Disabled, Day Care Services, and Residential Health Care and related Medicaid claims presented to THE CITY OF NEW YORK, as described herein.

119.    That in requesting payment, the defendants each falsely certified and presented to THE CITY OF NEW YORK that the providers and/or recipients of said services were eligible to receive said services, in contravention of applicable law and regulation, including but not limited to 18 NYCRR 504.

120.    That the presentation of said false claims to THE CITY OF NEW YORK caused THE CITY OF NEW YORK to suffer significant pecuniary losses, by paying false claims which, contrary to eligibility law and regulation, should not have been presented to them.

WHEREFORE, plaintiffs, as indicated above, demand judgment against each of the defendants in the aggregate amount of Seven hundred thirty-nine million, eight hundred and fifty-nine thousand, one hundred and forty-four dollars  ($739,859,144.00) for each of the First, Second, Third, and Fourth Causes of Action, together with attorneys' fees, costs, disbursements, interest, statutory damages, and exemplary damages, including but not limited to treble damages and civil penalties as the law allows, including civil penalties of not less for each and every violation of the False Claims Act claimed herein, as per 31 USC 3729 (g) and State Finance Law Sec. 189 (g).

Dated: Albany, New York

August 13, 2014

Respectfully submitted,

RICHARD B. ANCOWITZ, ESQ.,

LAW OFFICE OF RICHARD B. ANCOWITZ

Counsel for Plaintiffs

21 Everett Road Extension

Albany, New York 12205

(518) 489-1098

SANFORD ROSENBLUM, ESQ.

LAW OFFICE OF SANFORD ROSENBLUM

Co-counsel for Plaintiffs

110 Great Oaks Blvd.

Albany, NY 12203

(518) 213-3012

*Application For Admission To This Honorable*
*Court Forthcoming*